UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-CV-816-ACL |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Michael A. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he was capable of performing past relevant work. This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

remanded.

## I. Procedural History

Plaintiff filed his application for benefits on June 30, 2022. (Tr. 450-56.) He claimed he became unable to work on February 28, 2022, due to post-concussive syndrome, light sensitivity, auditory sensitivity, cognitive overloading, dizziness, headaches, and nausea. (Tr. 509.) Plaintiff was 50 years of age on his alleged onset of disability date. *Id.* His application was denied initially and on reconsideration. (Tr. 351-55, 359-62.) On May 30, 2024, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 15-36.) The Appeals Council denied Plaintiff's claim for review. (Tr. 1-7.) Thus, this decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ "failed to properly consider the issue of failure to follow prescribed treatment." (Doc. 19 at 7.) He next argues that the ALJ "failed to properly consider opinion evidence." *Id.* at 11.

## II. The ALJ's Determination

The ALJ first found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2026. (Tr. 20.) He stated that Plaintiff has not engaged in substantial gainful activity since February 28, 2022, the alleged onset date. *Id.* Next, the ALJ concluded that Plaintiff had the following severe impairments: post-concussive syndrome and migraine headaches. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to unprotected heights, moving mechanical parts and vibration. He can work in moderate noise.

*Id.*

The ALJ found that Plaintiff was capable of performing past relevant work as an art teacher, teacher's aide, and receptionist. (Tr. 27.) He concluded that Plaintiff was, therefore, not under a disability from his alleged onset date through the date of the decision. (Tr. 29.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 30, 2022, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 30.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's impairments.
6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability

remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Although framed as only two claims, Plaintiff in fact challenges numerous findings of the ALJ. Specifically, he takes issue with the ALJ's severity determination; evaluation of Plaintiff's compliance with medical treatment; determination of whether Plaintiff's migraines

medically equaled a listing; evaluation of the medical opinion evidence; and determination of Plaintiff's RFC. The undersigned will discuss Plaintiff's claims in turn.

**A. Severity Determination**

Plaintiff first argues that the ALJ erred at step two of the sequential analysis by finding Plaintiff's hearing loss, degenerative disc disease, and all mental impairments non-severe.

As discussed above, at step two the ALJ must determine "whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page*, 484 F.3d at 1043; *accord* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521m 416.920(a)(4)(ii). If an impairment has "no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Kirby* 500 F.3d at 707. "It is the claimant's burden to establish that [the] impairment or combination of impairments are severe." *Id.* Furthermore, "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708 (internal citations omitted).

At step two the ALJ considered Plaintiff's hearing loss, degenerative disc disease of the lumbar spine, and mental impairments, and determined these impairments do not cause more than minimal limitation of his ability to perform basic work activities and were therefore non-severe. (Tr. 21.)

***Hearing Loss***

The ALJ acknowledged that Plaintiff developed hearing loss during the relevant period. (Tr. 21.) He stated that Plaintiff reported experiencing hearing loss in the left ear in November 2022, after having an upper respiratory infection. (Tr. 21, 694.) Testing performed in

December 2022 revealed asymmetric low-frequency sudden hearing loss, with 100 percent word recognition on the right and 92 percent word recognition on the left. (Tr. 21, 694, 701.) Plaintiff's hearing was found to be "grossly intact" at a January 2023 follow-up examination. (Tr. 21, 695.) His hearing improved with a shot of steroids. (Tr. 21, 749.) In November 2023, an audiogram revealed mild sensorineural hearing loss in the right ear and mild to moderate sensorineural hearing loss in the left ear. (Tr. 21, 781.) Plaintiff had 100 percent word recognition in both ears. *Id.* He started steroids in December 2023. (Tr. 21, 787.)

The ALJ concluded that Plaintiff's 100 percent word recognition supports that his hearing loss is not causing more than minimal restrictions in the ability to perform basic work activity. (Tr. 21.) In determining Plaintiff's RFC, the ALJ limited Plaintiff to working in only "moderate noise." (Tr. 23.)

The Court finds that any error in not finding Plaintiff's hearing loss severe at step two is harmless, as the ALJ considered Plaintiff's hearing loss in determining his RFC at step four. *See Rouse v. Berryhill*, No. 4:17-CV-2511-DDN, 2019 WL 1359384, at *5 (E.D. Mo. Mar. 26, 2019) ("'[T]he step two determination of severity is merely a threshold requirement' … 'so long as the ALJ finds any severe impairment and moves to the next step, an erroneous failure to find a severe impairment is usually harmless.'") (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)).

***Degenerative Disc Disease***

The ALJ acknowledged Plaintiff has been diagnosed with degenerative disc disease of the lumbar spine. (Tr. 21.) He noted that imaging revealed an incidental finding of degenerative disc disease at L5-S1. (Tr. 21, 643.) The ALJ pointed out that Plaintiff has not received treatment or taken medication for this condition. (Tr. 21.) He also noted that Plaintiff testified at the hearing that yoga helps his back pain. (Tr. 21, 301.) The ALJ concluded that

this condition is controlled with minimal treatment and is not causing more than minimal restrictions on Plaintiff's ability to perform basic work activity. (Tr. 21.)

The undersigned finds that the ALJ's determination that Plaintiff's degenerative disc disease is not severe is supported by substantial evidence. The ALJ cited the minimal objective findings and lack of treatment for this impairment as support for the finding that it does not cause more than minimal restrictions in his ability to perform basic work activity. Plaintiff cites no evidence showing otherwise.

***Mental Impairments***

The ALJ considered Plaintiff's medically determinable mental impairments of mild cognitive disorder, anxiety disorder, and depressive disorder, and concluded they do not singly or in combination cause more than minimal limitation of Plaintiff's ability to perform basic mental work activities. (Tr. 21.)

The ALJ properly considered the four broad functional areas of mental functioning to make this determination. He ultimately found that Plaintiff had mild limitations in the four areas—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 21-22.) The ALJ cited the findings of the state agency psychologists James Morgan, Ph.D., and Margaret Sullivan, Ph.D; and consultative psychologist Kezia Jackson, Psy. D., in support of this determination. (Tr. 21, 334-35, 343-44, 747.)

The ALJ discussed the variances in the expert opinions. Specifically, Dr. Jackson found Plaintiff had moderate limitations in his abilities to concentrate, persist, or maintain pace; and adapt or manage himself, due to his concussive symptoms, whereas Drs. Morgan and Sullivan found Plaintiff was only mildly limited in these areas. (Tr. 22, 747, 334-35, 343-45.) The ALJ

found that the record was consistent with mild limitations. For example, he noted that Plaintiff's memory, attention, and intelligence were intact, and he could follow three-step commands and perform serial sevens. (Tr. 22, 648, 661, 745.) During his field office interview, Plaintiff had no difficulty concentrating, was well-prepared, and answered questions clearly. (Tr. 21, 517.) The ALJ further noted that Plaintiff does not require mental health medications or intensive outpatient treatment, and he has never been hospitalized. (Tr. 22, 301.) Instead, he chooses to pursue alternative treatment and reports symptoms reduction with color therapy. (Tr. 22, 1170.) The ALJ concluded that this record is consistent with only mild limitations. *Id.*

The evidence cited by the ALJ supports his determination that Plaintiff's mental impairments result in only mild limitations. Plaintiff argues that the ALJ erred in "focusing on isolated normal findings and treatment decisions," rather than the "combined functional impact of these impairments." (Doc. 19 at 4.) Plaintiff, however, does not point to *any evidence* in the record supporting his claim that his mental impairments result in more than mild limitations. Thus, the undersigned finds that the ALJ's determination that Plaintiff's mental impairments are non-severe is supported by substantial evidence on the whole record.

**B. Noncompliance and Subjective Complaints**

Plaintiff argues that the ALJ erred in considering the issue of Plaintiff's failure to follow prescribed treatment. He contends that the ALJ failed to consider the criteria necessary for a finding of failure to follow treatment as set forth in SSR 18-3p.[2]

[2]Though Plaintiff cites to SSR 82-59, that rule was repealed and replaced by SSR 18-3p effective October 29, 2018. The Court therefore refers to SSR 18-3p instead.

Plaintiff's argument neglects the distinction between non-compliance as it relates to SSR 18-3p and non-compliance as it relates to consistency evaluations for Plaintiff's subjective complaints of pain. Under SSR 18-3p, a claimant's case may be denied if the claimant is found to be disabled but is non-compliant with his or her prescribed treatment, and compliance with such treatment would restore the claimant's ability to work. *Phillips v. Colvin*, No. 4:14-CV-2108-DDN, 2016 WL 126371 at *9 (E.D. Mo. Jan. 12, 2016). Alternatively, an ALJ may use a claimant's non-compliance with prescribed treatment as part of his or her evaluation of subjective pain allegations. *See, e.g.*, *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking.") (citations omitted).

The Court finds no error with the ALJ's consideration of non-compliance. The ALJ noted that Plaintiff declined Botox injections recommended by his neurologist for treatment of his migraines in September 2023. (Tr. 25-26, 798.) At that time, Plaintiff reported migraines occurring about 5 to 7 times a week, with associated dizziness and blurred vision. *Id.* Christopher Wolf, D.O., recommended Botox injections using a standard protocol, due to the severe nature of his migraine headaches. *Id.* Dr. Wolf noted that Plaintiff expressed concern about medication in general due to his history of substance abuse, but Dr. Wolf explained that "this injection would be a safer mechanism for him." *Id.* At an urgent care visit later that month, Plaintiff denied any stronger medication or home medications for his migraines. (Tr. 26, 1189.) At an October 2023 visit, his primary care provider Dr. Lattimore indicated that Plaintiff experiences migraines regularly and was working on additional treatments. (Tr. 890.) He recommended that Plaintiff proceed with acupuncture and hold off on Botox exploration at that

time. *Id.* On January 30, 2024, Plaintiff declined an occipital nerve block offered by his neurologist for treatment of his migraines, "as acupuncture has been helpful." (Tr. 26, 957.) In February 2024, Plaintiff presented to neurologist Wilson Rodriguez, M.D., at which time he reported he had been taking many herbal supplements, which had "decreased the intensity of his headaches." (Tr. 26, 985.) Dr. Rodriguez discussed with Plaintiff the importance of an abortive therapy and preventative plan, but Plaintiff "declined it and would like to continue trying non pharmacological options." (Tr. 988.) He was directed to contact Dr. Rodriguez when he was "ready for further pharmacological therapies." *Id.*

The ALJ properly found Plaintiff's failure to follow his physicians' recommendations for medication and other treatment was inconsistent with his allegations of disabling migraines. *Swarthout*, 35 F.4th at 612. He further considered the fact that Plaintiff reported improvement with conservative, alternative medicine therapies. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding conservative treatment weighs against credibility); *King v. Berryhill*, No. 4:17-CV-2512-ERW, 2019 WL 1129971, at *6 (E.D. Mo. Mar. 12, 2019) (ALJ may evaluate plaintiff's improvement with treatment in analyzing the credibility of subjective complaints of pain).

**C. Opinion Evidence and RFC**

Plaintiff argues that the ALJ erred in discounting the opinion of treating physician Dr. Lattimore, ignoring the opinion of treating neurologist Dr. Jamil Neme, and crediting the opinions of the state agency non-examining sources. He further argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for the full extent of Plaintiff's migraine-related, post-concussive, visual, auditory, and cognitive limitations.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'")

(quoting § 404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

Plaintiff first argues that the ALJ erred in his evaluation of Dr. Lattimore's opinion. Dr. Lattimore authored a Headaches Residual Functional Capacity Questionnaire on April 10, 2026. (Tr. 1098-1100.) He stated that he sees Plaintiff every six months as his primary care physician. (Tr. 1098.) Dr. Lattimore listed the following diagnoses: history of traumatic head injury, post concussion syndrome, dizziness, other fatigue, depressive disorder, and sensorineural hearing loss. *Id.* He stated that Plaintiff experiences constant frontal, posterior, lateral, and occipital headaches, depending on what activity is performed, ranging in severity from moderate to severe. *Id.* Dr. Lattimore listed Plaintiff's symptoms as vertigo, nausea, photosensitivity, visual disturbances, mood changes, mental confusion/inability to concentrate, and difficulty dealing with intense emotions from others. *Id.* He stated that Plaintiff "states [his headaches] are constant." *Id.* Dr. Lattimore indicated that bright lights, lack of sleep, noise, stress, strong odors, vigorous exercise, and weather changes trigger Plaintiff's headaches; bright lights, moving around, and noise make the headaches worse; and lying in a dark room, massage, cold/hot packs, medications, supplements, and rest make the headaches better. (Tr. 1099.) He found that Plaintiff's impairments were reasonably consistent with his symptoms. *Id.* Dr. Lattimore stated that Plaintiff was receiving ongoing acupuncture and home exercise treatment; and had tried physical therapy and medication in the past. *Id.* Plaintiff received "some benefit but minimal" from treatment. *Id.* Dr. Lattimore expressed the opinion that Plaintiff was precluded from performing even basic work activities and would need a break from the workplace when he has a headache. (Tr. 1100.) He described Plaintiff's limitations affecting

his ability to work on a sustained basis as follows: Plaintiff is unable to read, sit at a screen for longer than a few minutes without worsening symptoms; and is unable to walk, lift, bend, stoop without increasing his headaches. *Id.*

The ALJ found Dr. Lattimore's opinion "not persuasive," because it "does not discuss evidence in support other than the claimant's statements regarding the severity and frequency of headaches." (Tr. 27.) The ALJ further stated that Dr. Lattimore's opinion was not consistent "with repeated statements that his symptoms are improved with acupuncture and supplements." *Id.*

Plaintiff contends that the ALJ erred in discounting Dr. Lattimore's opinion solely because it relies, in part, on Plaintiff's subjective complaints. He argues that Dr. Lattimore's opinion is consistent with the February 2024 findings of neurologist Dr. Rodriguez, where Dr. Rodriguez documented ongoing migraines with classic symptoms like photophobia, phonophobia, and nausea, which were severe in intensity and prolonged in duration. (Tr. 985.) Dr. Rodriguez also noted that Plaintiff was wearing glasses during his examination due to reported light sensitivity. (Tr. 986.)

Plaintiff also argues that the ALJ "entirely omitted discussion of treating neurologist Dr. Jamil Neme's opinion from June 15, 2024, which aligns closely with Dr. Lattimore's." (Doc. 19 at 14.) Dr. Neme completed a Headaches Residual Functional Capacity Questionnaire, in which he found Plaintiff would generally be precluded from performing even basic work activities and would need a break from the workplace when he has a headache. (Tr. 286.) Dr. Neme listed Plaintiff's diagnoses as traumatic brain injury, chronic headaches, vestibular dysfunction, and chronic fatigue. (Tr. 284.) He described Plaintiff's headaches as "moderate to severe daily…unilateral or bilateral all day…" *Id.* Dr. Neme listed Plaintiff's headache

triggers as bright lights, noise, stress, vigorous exercise, and weather changes. *Id.* He did not believe Plaintiff was a malingerer. (Tr. 285.) Dr. Neme explained that Plaintiff has undergone behavioral therapy, vestibular therapy, medications, and acupuncture, "with mild improvement but continues to have baseline headache." *Id.* He indicated that Plaintiff was likely to have "good days" and "bad days," but even on good days he has a baseline headache and photosensitivity. *Id.* Dr. Neme stated that Plaintiff was "unable to tolerate computer use, standing, sitting, conversation, [or] noise for any considerable amount of time." *Id.*

The ALJ rendered his decision on May 30, 2024, before Dr. Neme authored his opinion. (Tr. 30.) Plaintiff submitted this new evidence to the Appeals Council. (Tr. 2, 284-86.) The Appeals Council stated that the ALJ decided Plaintiff's case through March 31, 2024, [3] and Dr. Neme's opinion does not relate to the period at issue. (T. 2.) As such, the Appeals Council found that the evidence "does not affect the decision about whether you were disabled beginning on or before March 31, 2024." *Id.*

The Appeals Council will review an ALJ's decision if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Evidence submitted to the Appeals Council is material when it relates to the claimant's condition for the time period for which benefits were denied, and not to "after-acquired conditions or post-decision deterioration of a pre-existing condition." *Bergmann v. Apfel,* 207 F.3d 1065, 1069-70 (8th Cir. 2000). *See also*

---

[3] Although the Appeals Council indicated the ALJ decided Plaintiff's case through "*March 31*, 2024," the ALJ's decision was dated *May 30*, 2024, and the ALJ clearly stated his finding that Plaintiff was not disabled through the date of his decision. (Tr. 29-30.) The undersigned construes this as a typographical error that does not impact this Court's determination.

*Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir. 1997) (new evidence concerning subsequent deterioration of a previously non-disabling condition is not material). The Appeals Council's failure to consider such evidence "may be a basis for remand by a reviewing court." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). *See also Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012). Whether evidence is new, material, and related to the adjudicated period is a question of law the court reviews de novo. *Box*, 52 F.3d at 171.

Here, the Appeals Council did not determine whether Dr. Neme's opinion would have changed the ALJ's opinion. Instead, it found the evidence does not relate to the period at issue, as it was dated after the ALJ issued his decision. (Tr. 2.) The undersigned finds Dr. Neme's opinion is new, material, and relates to the period on or before the ALJ's decision date. The evidence is new because it is Plaintiff's treating neurologist's first opinion as to the extent of his limitations. The evidence is also material and related to the relevant period. Dr. Neme provided his opinion only two weeks after the ALJ issued his decision. The opinion describes Plaintiff's headaches and the limitations they impose on Plaintiff. *See Bergmann*, 207 F.3d at 1070 (medical reports from post-hearing visits to a psychiatrist which "continue to discuss the medical condition presented to the ALJ, but provide a more specific and conclusive diagnosis regarding [Plaintiff]'s disability and work capacity" are material).

Finally, the Court finds there is a reasonable probability that this evidence would have changed the outcome of the ALJ's decision. In making the RFC determination, the ALJ relied heavily on evidence tending to undermine Plaintiff's subjective complaints of severe and disabling migraines, finding Plaintiff declined medication recommended by his providers and his symptoms improved with conservative treatment. The ALJ also discredited Dr. Lattimore's opinion on this basis. Dr. Neme's opinion that Plaintiff continues to suffer from significant

symptoms despite medication and other treatment may well have affected the ALJ's assessment of the severity and limiting effects of Plaintiff's symptoms during the time period prior to his decision.

Thus, it was error for the Appeals Council to decline to consider this opinion.

## **Conclusion**

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ should appropriately review Dr. Neme's opinion and reassess the medical opinion evidence, including the opinions of Dr. Lattimore and the state agency physicians. The ALJ should reevaluate the medical evidence regarding Plaintiff's limitations resulting from his headaches, evaluate whether Plaintiff's migraine disorder medically equaled Listing 11.02, and should further develop the record as necessary to formulate an RFC.

A separate Judgment shall accompany this Memorandum and Order.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of September, 2026.